**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **EVIE GARCIA,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:07-cv-78-PMW** |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is Evie Garcia's ("Plaintiff") appeal of Michael J. Astrue's (the "Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id*. §§ 1381-1383f. After careful consideration of the written briefs and the complete record, the court has determined that oral argument would not be helpful or necessary in this case.

## RELEVANT BACKGROUND

On April 29, 1998, Plaintiff first applied for DIB and SSI, alleging disability beginning on January 23, 1997, due to the effects of a cerebral aneurysm.[1] Plaintiff did not request a hearing after her application was denied at the initial and reconsideration stages of administrative review.

---

[1] *See* docket no. 10, Administrative Record ("Tr. ____"), 399-402, 432.

Plaintiff again applied for DIB and SSI on March 2, 1999, and again alleged disability beginning on January 23, 1997, due to the effects of a cerebral aneurysm.[2]  After Plaintiff's applications were denied initially and upon reconsideration,[3] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and that hearing was held on September 14, 2000.[4]  An ALJ issued a written decision on February 16, 2001, determining that Plaintiff was not entitled to DIB or SSI.[5]  On March 8, 2001, Plaintiff filed a request for review of the ALJ's decision.[6]  On May 3, 2002, the Appeals Council denied Plaintiff's request for review of that decision, making it the Commissioner's final decision for purposes of judicial review.[7]  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On November 5, 2001, Plaintiff filed yet another application, this time for only SSI, alleging disability beginning on February 17, 2001.[8]  After Plaintiff's application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ.[9]

---

[2]  *See* Tr. 107-09, 146, 405-07.

[3]  *See* Tr. 85-96.

[4]  *See* Tr. 31-84.

[5]  *See* Tr. 16-24.

[6]  *See* Tr. 11.

[7]  *See* Tr. 8-9.

[8]  *See* Tr. 489-91.

[9]  *See* Tr. 479-86.

While that request was pending, on July 16, 2002, Plaintiff filed a complaint in this court to appeal the Commissioner's final decision on her March 2, 1999 application for DIB and SSI.[10] On February 27, 2003, the Commissioner filed an unopposed motion for remand.[11]  On March 3, 2003, the court granted that motion and remanded the case for further administrative proceedings.[12]

On December 4, 2003, a supplemental hearing was held before an ALJ.[13]  The ALJ issued a written decision on March 19, 2004.[14]  In that decision, the ALJ granted in part and denied in part Plaintiff's claims, based on her March 2, 1999 and November 5, 2001 applications.[15]  The ALJ determined that Plaintiff was disabled from January 23, 1997, to January 20, 2000, and that she was able to perform a limited range of light, unskilled work after January 20, 2000, through the date of the decision.[16]  Plaintiff filed exceptions to the ALJ's decision, and the Appeals Council assumed jurisdiction of the case.[17]

---

[10]  *See Garcia v. Barnhart*, 2:02-cv-654-TS, docket no. 3.

[11]  *See id.* at docket no. 14.

[12]  *See id.* at docket no. 15.

[13]  *See* Tr. 666-725.

[14]  *See* Tr. 431-45.

[15]  *See id.*

[16]  *See id.*

[17]  *See* Tr. 425-29.

On June 23, 2004, while this case was pending before the Appeals Council, Plaintiff filed yet another separate application for SSI.[18]  On December 14, 2006, an ALJ issued a decision on that application, finding Plaintiff disabled from March 20, 2004, through the date of the decision.[19]  Although Plaintiff makes multiple references in her briefs to that December 14, 2006 decision, the court notes that it was made in a separate case and the conclusions made therein are not at issue as part of Plaintiff's instant appeal.

On August 15, 2006, the Appeals Council sent a letter to Plaintiff concerning the ALJ's March 19, 2004 decision.[20]  In that letter, the Appeals Council stated that the ALJ had failed to rule on the issue of reopening Plaintiff's April 29, 1998 application and that reopening that application was indeed warranted.[21]  The Appeals Council notified Plaintiff that she could submit a statement about the facts and law of her case within thirty days of the date of the letter.[22]  The Appeals Council also notified Plaintiff that if it did not receive any submissions within thirty days, it would assume that she did not want to submit more information about her case.[23]

---

[18]  *See* docket no. 17 at 18.

[19]  *See id*. at 18-24.

[20]  *See* Tr. 425-428

[21]  *See* Tr. 426.

[22]  *See* Tr. 427.

[23]  *See id*.

On December 28, 2006, the Appeals Council issued a written decision on Plaintiff's appeal of the ALJ's March 19, 2004 decision.[24]  In that decision, the Appeals Council adopted the ALJ's findings that Plaintiff was disabled from January 23, 1997, to January 20, 2000, and that she was able to perform a limited range of light, unskilled work thereafter.[25]  The Appeals Council again stated that the ALJ had failed to rule on the issue of reopening Plaintiff's April 29, 1998 application and that reopening that application was warranted.[26]  That notwithstanding, the Appeals Council never again addressed Plaintiff's April 29, 1998 application.  Indeed, the Appeals Council's decision does not include any discussion to indicate that it reopened Plaintiff's April 29, 1998 application.  Instead, the Appeals Council simply indicated that it was basing its decision on Plaintiff's March 2, 1999 application.[27]  That decision was the Commissioner's final decision in Plaintiff's case for purposes of judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On February 13, 2007, Plaintiff filed her complaint in this case, which was assigned to Chief District Judge Tena Campbell.[28]  On March 15, 2007, both parties consented to having a United States Magistrate Judge conduct all proceedings in the case, including entry of final

---

[24]  *See* Tr. 421-24.

[25]  *See* Tr. 421-24.

[26]  *See* Tr. 421-24.

[27]  *See* Tr. 421-24.

[28]  *See* docket no. 3.

judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[29]

Consequently, the case was reassigned to Magistrate Judge Paul M. Warner pursuant to 28

U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[30]

On May 18, 2007, the Commissioner filed an unopposed motion to remand this case to

the Social Security Administration in order to locate and transcribe Plaintiff's claim file.[31]  The

court granted that motion on May 21, 2007.[32]

On October 9, 2007, the Commissioner filed his answer to Plaintiff's complaint,[33] and the

court received the Administrative Record the following day.[34]  On February 28, 2008, Plaintiff

filed a motion to supplement the Administrative Record.[35]  The court granted that motion on

---

[29]  *See* docket no. 4.

[30]  *See id.*

[31]  *See* docket no. 6.

[32]  *See* docket no. 8.

[33]  *See* docket no. 9.

[34]  *See* docket no. 10.

[35]  *See* docket no. 14.

April 3, 2008.[36]  Plaintiff filed her opening brief on April 8, 2008.[37]  The Commissioner filed his

responsive brief on May 7, 2008.[38]  Plaintiff filed her reply brief on May 30, 2008.[39]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and

citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more than a

scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (quotations and citation

omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor

substitute [its] judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to

provide this court with a sufficient basis to determine that appropriate legal principles have been

followed [are] grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)

(quotations and citation omitted).

---

[36] *See* docket nos. 16-17.

[37] *See* docket nos. 18-21.

[38] *See* docket no. 22.

[39] *See* docket no. 23.

A five-step evaluation process has been established for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  If not, the evaluation proceeds to the fourth step . . . ."  *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  "If the claimant is able to perform his previous work, he is not disabled."  *Williams*, 844 F.2d at 751.  If, however, the

claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity . . . to perform other work in the national economy in view of his age, education, and work experience." *Id*.; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

Plaintiff makes a total of nine arguments in her opening brief.  In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that:

1.    The ALJ and the Appeals Council both erred by failing to reopen Plaintiff's April 29, 1998 application.

2.    The ALJ and the Appeals Council erred in their consideration of the evidence.

3.    The ALJ erred in evaluating Plaintiff's credibility.

4.    The ALJ erred with respect to the testimony of the medical expert ("ME") on the severity of Plaintiff's mental impairments.

5.    The ALJ erred in the hypothetical given to the vocational expert ("VE").

6.    The ALJ erred by failing to recontact Dr. Rockwell, and the Appeals Council erred by concluding that the error was harmless.

9

7.      The ALJ erred by failing to consider all of Plaintiff's impairments.

8.      The Appeals Council erred in its consideration of Dr. Grissom's March 23, 2004 evaluation.

9.      The Commissioner's December 14, 2006 decision in another case is internally inconsistent with the Commissioner's decision in this case.

## I.  April 29, 1998 Application

Plaintiff argues that the ALJ and the Appeals Council both erred by failing to reopen Plaintiff's April 29, 1998 application.  In response, the Commissioner argues that because Plaintiff's April 29, 1998 application and her March 2, 1999 application relied on the same evidence and alleged the same onset date of disability (January 23, 1997), there is no harm in the ALJ's and the Appeals Council's failures to reopen Plaintiff's April 29, 1998 application.

In her reply, Plaintiff correctly asserts that the Commissioner's argument is without merit. With respect to her application for DIB, Plaintiff was able to receive retroactive benefits for only up to twelve (12) months before the date of her application.  *See* 42 U.S.C. § 423(b); 20 C.F.R. § 404.621.  In both a letter to Plaintiff dated August 15, 2006,[40] and its written decision dated December 28, 2006,[41] the Appeals Council stated that the ALJ had failed to rule on the issue of reopening Plaintiff's April 29, 1998 application and that reopening that application was warranted.  Despite that determination, the Appeals Council did not include any discussion in its written decision to indicate that it had indeed reopened Plaintiff's April 29, 1998 application.

---

[40]  *See* Tr. 426.

[41]  *See* Tr. 421-24.

Instead, the Appeals Council simply indicated that it was basing its decision on Plaintiff's March 2, 1999 application.[42]

Without any further discussion of the April 29, 1998 application, the court is left to conclude that the Appeals Council failed to reopen it.  In light of the Appeals Council's conclusion that reopening was warranted, it follows that the Appeals Council erred by failing to do so.  Accordingly, the court has determined that the Commissioner's decision should be reversed with respect to the issue of reopening Plaintiff's April 29, 1998 application.

Turning to the remedy for that error, the Tenth Circuit has stated that "[w]hen a decision of the [Commissioner] is reversed on appeal, it is within th[e] court's discretion to remand either for further administrative proceedings or for an immediate award of benefits."  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  In deciding the appropriate remedy, the court considers both "the length of time the matter has been pending and whether or not[,] given the available evidence, remand for additional fact-finding would serve [any] useful purpose [or] would merely delay the receipt of benefits."  *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (second alteration in original) (quotations and citations omitted).

For the following reasons, the court will reverse the Commissioner's decision on this issue and remand for an immediate award of DIB based on Plaintiff's April 29, 1998 application, rather than Plaintiff's March 2, 1999 application.  First, the Appeals Council stated unequivocally that Plaintiff's April 29, 1998 application should be reopened, yet failed to do so.

---

[42] *See* Tr. 423.

Second, by using the wrong application date, the Appeals Council denied Plaintiff the ability to obtain the appropriate number of months of retroactive DIB.  *See* 42 U.S.C. § 423(b); 20 C.F.R. § 404.621.  Third, the Commissioner has admitted that Plaintiff's April 29, 1998 application and her March 2, 1999 application relied on the same evidence and alleged the same onset date of disability.  Finally, there appears to be no useful purpose in remanding the case for additional fact-finding.  *See Salazar*, 468 F.3d at 626.  The Appeals Council simply used the wrong application date for purposes of awarding Plaintiff DIB, which is an error that this court can easily correct.  As a final matter on this issue, it appears that retroactive benefits are available only for DIB, and not SSI.  *Compare* 20 C.F.R. § 404.621, *with* 20 C.F.R. § 416.335.  Accordingly, the correction to Plaintiff's previous award of benefits shall be only for any additional DIB resulting from the new application date of April 29, 1998.

## II.  Consideration of Evidence

Plaintiff argues that the ALJ and the Appeals Council failed to consider all of the evidence in this case.  Specifically, Plaintiff asserts that (1) the ALJ failed to consider any evidence relating to events after January 20, 2000; (2) the Appeals Council ignored certain portions of a work capacity evaluation; and (3) the Appeals Council failed to consider the ALJ's December 14, 2006 decision.  The court will address each argument in turn.

First, the court has determined that Plaintiff's argument that the ALJ failed to consider any evidence relating to events after January 20, 2000, is without merit.  After a lengthy

discussion of Plaintiff's medical history,[43] the ALJ stated: "By January 20, 2000, [Plaintiff] was doing well. She was finished with her antibiotic treatments, but would have to have reconstruction of the frontal lobe when Dr. Schmidt thought it appropriate."[44] The ALJ also stated that after January 20, 2000, Plaintiff's "impairment no longer met a listing because she was no longer required to take antibiotics and her wounds were healed and stable."[45] Although Plaintiff lists several pieces of evidence she claims the ALJ ignored, the Commissioner also lists several pieces of evidence that support the ALJ's conclusion. The ALJ was not required to discuss every piece of evidence in the record, *see Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), and it is not this court's role to reweigh the evidence. *See Madrid*, 447 F.3d at 790. Further the court's review of the ALJ's decision demonstrates that the ALJ did in fact consider the evidence relating to events after January 20, 2000, but concluded that it was not supportive of a finding of disability.

Second, the court concludes that Plaintiff's argument that the Appeals Council ignored certain portions of a work capacity evaluation is without merit. Based upon the Appeals Council's failure to discuss two specific details of that evaluation, Plaintiff asserts that the Appeals Council "ignored" those details. However, a review of the Appeals Council's decision demonstrates that the Appeals Council specifically considered the work capacity evaluation but

---

[43] *See* Tr. 434-37.

[44] Tr. 437.

[45] Tr. 438.

concluded that it was not inconsistent with the ability to perform unskilled work.  Further, the Appeals Council listed the specific evidence "refuting the opinions" set forth in the evaluation.[46] For those reasons, the court concludes that the Appeals Council sufficiently considered the above-referenced work capacity evaluation.

Third, the court concludes that Plaintiff's argument with respect to the ALJ's December 14, 2006 decision is also without merit.  The court agrees with the Commissioner's assertion that the ALJ's decision in that separate case, which was based on different evidence and a later-filed application, is not necessarily evidence that the Appeals Council was required to consider in this case.  Notably, in the December 14, 2006 decision, the ALJ specifically stated that he had no jurisdiction over previously filed applications and that his decision was adjudicating only Plaintiff's June 23, 2004 application.[47]  In her reply, Plaintiff criticizes the Commissioner for failing to cite appropriate legal authority for its argument.  While it is true that the Commissioner has cited only persuasive precedent for its argument, Plaintiff has done the same.  In addition, unlike the Commissioner, Plaintiff has failed to provide the court with a pinpoint citation to the relevant portion of the authority she has cited.  In any event, the court has reviewed that case and was unable to locate any language that provides specific support for Plaintiff's argument.

The timing of the Commissioner's decisions further undermines Plaintiff's argument.  As previously noted, the Appeals Council sent a letter to Plaintiff on August 15, 2006, concerning

---

[46] Tr. 422.

[47] *See* docket no. 17 at 19.

the ALJ's March 19, 2004 decision.[48]  In that letter, the Appeals Council notified Plaintiff that she could submit a statement about the facts and law of her case within thirty days of the date of the letter and that if no submissions were received within thirty days, it would assume that she did not want to submit more information about her case.  The decision that Plaintiff claims the Appeals Council was required to consider in this case was issued on December 14, 2006, and was not brought the Appeals Council's attention until December 19, 2006.[49]  Not only were those dates well past the thirty-day deadline set forth in the Appeals Council's August 15, 2006 letter, but they preceded the December 28, 2006 issuance of the decision in this case by no more than two weeks.

Based on the foregoing, the court concludes that neither the ALJ nor the Appeals Council erred in their consideration of the evidence in this case.

### III.  Credibility

Plaintiff claims that the ALJ erred in evaluating Plaintiff's credibility.  In general, "[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id*.

---

[48]  *See* Tr. 425-428

[49]  *See* docket no. 17 at 14.

(quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

A more specific framework of analysis applies to determining whether Plaintiff's subjective allegations of pain are credible. *See Luna v. Bowen*, 834 F.2d 161, 162-66 (10th Cir. 1987). Under that framework, the court must consider "(1) whether [Plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [Plaintiff's] subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [Plaintiff's] pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (quoting and citing *Luna*, 834 F.2d at 163-64).

Even assuming, for the sake of argument, that Plaintiff has established the first two elements of that analytical framework, the court must still consider the third element. *See id*. Under the third element, consideration of the subjective evidence includes Plaintiff's own testimony and is "evaluated only on the basis of credibility." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

> When determining the credibility of pain testimony, the ALJ should consider such factors as the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id*. (quotations and citations omitted); *see also* Social Security Ruling ("SSR") 96-7p.

16

As noted by the Commissioner, the ALJ discounted Plaintiff's credibility only to the extent she alleged disability after January 20, 2000.[50]  In her conclusion with respect to Plaintiff's credibility, the ALJ stated:

> Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration has been given to all available information concerning [Plaintiff]'s pain and its functional effect on work-like activity.  The [ALJ] does not find [Plaintiff]'s functional allegations, and conclusion of total disability, to be reasonably consistent with the objective medical evidence and non-medical evidence, when considered as a whole, as discussed in detail above.  The [ALJ] is therefore discounting those subjective symptom complaints and their alleged functional effect in determining such are not totally disabling, either singly or in combination after January 20, 2000.[51]

In the discussion preceding that conclusion, the ALJ considered several of the above-referenced factors.  For example, the ALJ found that after January 20, 2000:  (1) the medical evidence showed that Plaintiff was no longer required to take antibiotics, her wounds were healed and stable, and she was no longer under continuous medical care;[52] (2) Plaintiff's activities of daily living were no longer affected;[53] and (3) Plaintiff had no postural, manipulative, visual, or communicative limitations.[54]  In addition, the ALJ noted that even prior

---

[50]  *See* Tr. 441.

[51]  *Id.*

[52]  *See* Tr. 437-38.

[53]  *See* Tr. 441.

[54]  *See id.*

to January 20, 2000, Plaintiff had the ability to care for her children, fix meals, do her normal housework without assistance, and participate in hobbies (crocheting and embroidering).[55]

The court has determined that the ALJ relied upon proper factors in reaching his conclusion about Plaintiff's credibility.  *See Thompson*, 987 F.2d at 1489; SSR 96-7p.  In addition, the court has reviewed the relevant portions of the record cited by the ALJ in support of his findings related to Plaintiff's credibility.  After that review, the court has determined that the cited portions constitute substantial evidence in support of those findings and that those findings are closely and affirmatively linked to that substantial record evidence.  *See Kepler*, 68 F.3d at 391.  Accordingly, the court will not disturb the ALJ's conclusion about Plaintiff's credibility.

## IV.  ME

Plaintiff argues that the ALJ erred by accepting the testimony of the ME on the severity of Plaintiff's mental impairments.  More specifically, Plaintiff asserts that because the ME did not know how to interpret the results of a specific psychological test, it was inappropriate for the ALJ to rely on the ME's opinion about Plaintiff's mental impairments.

Plaintiff's argument is without merit.  Plaintiff's argument focuses on an isolated portion of the ME's testimony concerning the results of a single psychological test.  In that testimony, the ME admitted that he was not familiar with the test or its results.[56]  Simply because the ME was not familiar with that particular test does not render all of his testimony unreliable.  Further,

---

[55]  *See* Tr. 440.

[56]  *See* Tr. 701-04.

Plaintiff does not address the remainder of the ME's testimony or the fact that the ME's opinion is consistent with much of the other evidence in the record.  Indeed, the ALJ specifically stated that he was relying on the medical expert's testimony because it was consistent with the medical evidence in the record.[57]

For these reasons, the court concludes that the ALJ did not err by relying upon the testimony of the ME on the severity of Plaintiff's mental impairments.

### V.  VE

Plaintiff argues that the ALJ erred by failing to provide the VE with a hypothetical containing all of Plaintiff's impairments.  In particular, Plaintiff asserts that the hypothetical did not include limitations shown by the results of two tests administered by Dr. Mooney in March 1997 or by Dr. Rockwell's determination in January 1998 that Plaintiff could work only twenty-three hours per week.[58]

As the Commissioner has noted, that argument misses the mark because it focuses on Plaintiff's impairments during the incorrect period of time.  The hypothetical provided to the VE should have, and did, include Plaintiff's impairments that existed after the date the ALJ determined Plaintiff was no longer disabled, January 20, 2000.  In contrast, the above-referenced tests were performed by Dr. Mooney in March 1997, which was shortly after Plaintiff's surgery and nearly three years prior to January 20, 2000.  Likewise, Dr. Rockwell's determination that

---

[57]  *See* Tr. 437.

[58]  *See* Tr. 202-06, 288.

Plaintiff could work only twenty-three hours per week was made approximately two years prior
to January 20, 2000.

Given that Dr. Mooney's testing and Dr. Rockwell's determination were remote in time
and occurred during the period of time in which Plaintiff was found to be disabled, there was no
reason for the ALJ to include their results in the hypothetical given to the VE.  The ALJ's
hypothetical properly focused on Plaintiff's limitations in the period of time after January 20,
2000.  For those reasons, the court concludes that the ALJ did not err with respect to the
hypothetical given to the VE.

## VI.  Dr. Rockwell

As noted in the background section of this memorandum decision and order, Plaintiff
previously appealed an ALJ's February 16, 2001 written decision.[59]  After the Appeals Council
denied Plaintiff's request for review of that decision,[60] Plaintiff filed a complaint in this court to
appeal the decision.[61]  The Commissioner filed an unopposed motion for remand,[62] which the
court granted.[63]  In its order, the court indicated that it was remanding the case for various
purposes, including to allow the ALJ to recontact Dr. Rockwell to obtain his opinion as to when

---

[59]  *See* Tr. 16-24.

[60]  *See* Tr. 8-9.

[61]  *See Garcia v. Barnhart*, 2:02-cv-654-TS, docket no. 3.

[62]  *See id*. at docket no. 14.

[63]  *See id*. at docket no. 15.

Plaintiff became capable of full-time work.[64]  On remand, the ALJ failed to recontact Dr.

Rockwell.[65]  However, in its August 15, 2006 letter to Plaintiff, the Appeals Council indicated

that the ALJ's failure to do so was harmless error because the ALJ found that Plaintiff's

disability began on the date Plaintiff alleged, January 23, 1997.[66]

Plaintiff argues that the ALJ erred by failing to recontact Dr. Rockwell and that the

Appeals Council erred by concluding that the error was harmless.  Plaintiff asserts that the court

remanded the case for the ALJ to recontact Dr. Rockwell to assist in determining the date her

disability ended, not the date it began.

Consistent with the Appeals Council's conclusion, the Commissioner admits that the ALJ

erred by failing to recontact Dr. Rockwell but asserts that the error was harmless.  In support of

that argument, the Commissioner asserts that the ALJ found other evidence sufficient to

determine that Plaintiff's period of disability ended on January 20, 2000.  In essence, the

Commissioner asserts that even if the ALJ had recontacted Dr. Rockwell, the ALJ's decision

would have been the same.

The court agrees with the Commissioner.  There is substantial evidence in the record to

support the ALJ's determination that Plaintiff's period of disability ended on January 20, 2000.

The court also agrees with the Appeals Council's conclusion that the ALJ's error in failing to

---

[64]  *See id.*

[65]  *See* Tr. 425.

[66]  *See id.*

recontact Dr. Rockwell was harmless.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th

Cir. 2005) (recognizing that harmless error analysis is applicable in the Social Security context if

"no reasonable administrative factfinder, following the correct analysis, could have resolved the

factual matter in any other way" (quotations and citation omitted)).

### VII.  Consideration of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to consider the Plaintiff's IQ score of 69.  However, as

noted by the Commissioner, the only indication of Plaintiff's IQ score of 69 is a reference to a

June 2006 psychological evaluation in the December 14, 2006 decision in a separate case.  As the

court noted in section II. of this memorandum decision and order, because the ALJ's December

14, 2006 decision was in a separate case and based on different evidence and a later-filed

application, that decision is not necessarily evidence that the Appeals Council was required to

consider in this case.  Further, there is nothing in the record to indicate that Plaintiff submitted

that evidence to the ALJ or the Appeals Council in this case.  For these reasons, the court has

concluded that the ALJ did not err by failing to consider Plaintiff's IQ score of 69.

### VIII.  Dr. Grissom's March 23, 2004 Evaluation

Plaintiff asserts that the Appeals Council erred in its consideration of Dr. Grissom's

March 23, 2004 evaluation.  In essence, Plaintiff argues that the Appeals Council rejected Dr.

Grissom's evaluation.  As noted earlier, however, the court's review of the Appeals Council's

decision reveals that the Appeals Council did not reject Dr. Grissom's evaluation.  Instead, the

Appeals Council indicated that it had considered Dr. Grissom's evaluation and concluded that the

limitations set forth therein were "not necessarily inconsistent with the ability to perform

unskilled work."[67]  In the court's view, that language indicates that the Appeals Council did not

reject Dr. Grissom's evaluation, but instead concluded that the evaluation failed to demonstrate

that Plaintiff was unable to perform unskilled work.  Furthermore, to the extent that language

could be construed as a rejection of Dr. Grissom's evaluation, the Appeals Council provided

specific reasons for doing so.  The Appeals Council stated that the limitations in Dr. Grissom's

evaluation were inconsistent with certain treatment notes indicating that Plaintiff was enrolled in

a clerical technician program at Salt Lake Community College in 2003-2004.[68]

## IX.  Commissioner's Decisions

Plaintiff argues that the Commissioner's December 14, 2006 decision in another case is

internally inconsistent with the Commissioner's decision in this case.  Without explicitly stating

as much, it appears that Plaintiff believes that because she had two separate cases proceeding

below (each based on different evidence and a different application), the Commissioner had an

obligation to ensure that the decisions in both cases were entirely consistent with one another.

The court has determined that Plaintiff's argument is without merit.  In the court's view,

it is unreasonable for a claimant to file two different applications on different dates, present

different evidence for each application, and then claim that the Commissioner erred by rendering

decisions in those cases that are inconsistent in some respects.  Such an argument fails to

persuade the court that the Commissioner's decision in this case is not based on substantial

---

[67]  Tr. 422.

[68]  *See id.*; *see also* Tr. 652-656.

evidence in the record in *this case*.  Although the court allowed Plaintiff to file documents that purportedly supplemented the record in this case,[69] it does not appear that those documents were indeed part of the record below.

For these reasons, the court concludes that the Commissioner did not err by rendering a decision in this case that is inconsistent in some respects with a decision in another case that was based on a different application and different evidence.

## CONCLUSION

In summary, the court concludes:

1.      The ALJ and the Appeals Council both erred by failing to reopen Plaintiff's April 29, 1998 application.

2.      The ALJ and the Appeals Council did not err in their consideration of the evidence.

3.      The ALJ did not err in evaluating Plaintiff's credibility.

4.      The ALJ did not err with respect to the testimony of the ME on the severity of Plaintiff's mental impairments.

5.      The ALJ did not err in the hypothetical given to the VE.

6.      The ALJ erred by failing to recontact Dr. Rockwell; however, the Appeals Council was correct in concluding that the error was harmless.

7.      The ALJ did not err in considering Plaintiff's impairments.

8.      The Appeals Council did not err in its consideration of Dr. Grissom's March 23, 2004 evaluation.

---

[69] *See* docket nos. 14, 16-17.

9.      The Commissioner did not err by rendering a decision in this case that is inconsistent in some respects with a decision in another case that was based on a different application and different evidence.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** on the sole issue of the ALJ's and the Appeals Council's failures to reopen Plaintiff's April 29, 1998 application.  Because the court concludes that there is no useful purpose in remanding for additional fact-finding, *see Salazar*, 468 F.3d at 626, this case is **REMANDED** for an immediate award of DIB based on Plaintiff's April 29, 1998 application, rather than Plaintiff's March 2, 1999 application.  *See* 42 U.S.C. § 423(b); 20 C.F.R. § 404.621. Because it appears that retroactive benefits are available only for DIB, and not SSI, *compare* 20 C.F.R. § 404.621, *with* 20 C.F.R. § 416.335, the court reiterates that the correction to Plaintiff's previous award of benefits shall be only for any additional DIB resulting from the new application date of April 29, 1998.

**IT IS FURTHER ORDERED** that the Commissioner's decision in this case is **AFFIRMED** in all other respects.

**IT IS SO ORDERED**.

DATED this 24th day of March, 2009.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

25